In the Matter of David A.
DAVIDSON, Debtor.

Nancy Y. DAVIDSON, Appellant,

v.

David A. DAVIDSON, Appellee.

No. 91–1055.

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1991.

Rehearing Denied Dec. 30, 1991.

Michael F. Pezzulli, Carol E. Farquhar,
Mary Gooch Noble, Pezzulli & Associates,
Dallas, Tex., for appellant.

Ronald Z. Aland, Ungerman, Hill, August & Dolginoff, Dallas, Tex., for appellee.

Before WISDOM, JOLLY, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

## I.

Nancy and David Davidson were married in 1977; they had no children and lived modestly for several years. In the last years of their marriage (1980–82), Mr. Davidson's income as a real estate broker increased dramatically, and the couple's manner of living became more extravagant. Mrs. Davidson, who had no college degree, worked for a while as a secretary for her husband. In 1982 the couple decided to divorce.

In 1983, the Davidsons signed a Marriage Settlement Agreement ("agreement"), which provided both for a division of marital property and periodic payments unsecured by, and unconnected to, any marital property. The relevant provisions are set forth below:

SUPPORT OF SPOUSE

8.01 *Periodic Payments.*

A. *Amount.* Husband contracts and agrees to pay with [sic] Wife, for her support and maintenance, periodic payments as follows:

1. The sum of $1,583 each and every month beginning on the 1st day of May, 1983 and continuing for one hundred twenty (120) subsequent months, payable on the first day of each month thereafter, for a total period of 121 months;

2. The sum of $6,149 each and every month beginning on the 1st day of May, 1983, and continuing for one hundred twenty (120) subsequent months, payable on the first day of each month thereafter, for a total period of 121 months;

. . . .

B. *Termination and Reduction.* The payments provided in Paragraphs 1 and 2 above shall continue until terminated in accordance with the earlier occurence [sic] of the following events: (1) death of Wife or (2) after the 121st payment.

Other portions of the agreement provided for periodic payments representing Mrs. Davidson's share in certain joint real estate ventures. These payments may be easily distinguished from the periodic maintenance, or alimony, payments because they terminated after twelve months and were to be reduced by any proceeds received by Mrs. Davidson from the sale of any part of the real estate ventures.

The agreement further provided that the payments would be taxable as income to Mrs. Davidson and deductible as to Mr. Davidson, that the payments would continue if Mr. Davidson died, and that the intent of the parties was that the payments be in the nature of support, not property settlement.[1]

---

1. The provisions read as follows:

8.02 *Taxable Income to Wife.* The parties here affirm their intention that the payments under Article VIII shall be deductible by Husband and reportable as income by Wife for federal income tax purposes, such payments constituting periodic payments, taxable to Wife and deductible by Husband, under the income tax provisions of §§ 71 and 215 of the Internal Revenue Code, as amended.

8.03 *Wife Shall Report Income.* Wife agrees to file timely a U.S. Individual Income Tax Return for the tax year 1983 and later calendar years reporting as income the periodic payments made to her by Husband pursuant to this Article VIII during each such calendar year; and, Wife further agrees to pay any federal income taxes attributable to such income.

8.04 *Payments after Death of Husband.* In the event Husband shall die prior to the termination date of the support payments provided in this Article VIII, Husband's obligation to pay such contractual alimony to Wife shall survive Husband's death and shall be binding on his estate. Further, Husband's estate shall be liable for any arrears in the payment of such contractual alimony. Husband's estate or other successors in interest shall be liable for such payments as the same shall have become due but were or are unpaid until terminated in accordance with the provisions of this Article VIII.

Mr. Davidson deducted all the payments he made under article 8.01(A)(1) and (2) for the years 1983 through 1986. Mrs. Davidson reported them as income for the same years. After Mr. Davidson stopped making payments, Mrs. Davidson filed a state lawsuit to enforce the terms of their divorce, which she won on summary judgment. Mr. Davidson subsequently filed for Chapter 7 bankruptcy relief.

## II.

The bankruptcy court determined that the parties had intended the periodic payments to be in the nature of a property settlement, rather than alimony. 104 B.R. 788. The court therefore held that all the periodic payment debt was dischargeable in bankruptcy.[2] The district court upheld that decision on appeal, holding that these payments represented a division of marital property, which can be discharged.[3]

The bankruptcy court further held that Mr. Davidson was not barred by the doctrine of equitable estoppel from asserting that the payments were not alimony. The district court agreed. Finally, the district court denied Mrs. Davidson her attorneys' fees for bringing the unsuccessful appeal.

Mrs. Davidson now appeals the district court's determination.

## III.

■ As a matter of law, we review *de novo* the district court's conclusion that Mr. Davidson is not estopped from claiming that the payments to Mrs. Davidson were not alimony. *Byram v. United States*, 705 F.2d 1418, 1421 (5th Cir.1983).[4] Title 11 U.S.C. § 523(a)(5) forbids the discharge in bankruptcy of debts

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that
>
> .     .     .     .     .
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....

■ A division of marital property in payments over time will not be declared nondischargeable in bankruptcy merely because the parties have labeled it "alimony." Rather, the bankruptcy court evaluates the intent of the parties at the time they estab-

---

8.05 *Intent to Pay Periodic Payments.* The support obligation of Husband embodied in the provisions of this Article VIII is unrelated to the division of marital property which is provided for in the other provisions of this Agreement and is not intended in any way to constitute a form of payment to Wife for any rights or interest she may have in the marital properties of the parties. This support obligation is contractual in nature and is not an obligation imposed by order or decree of court. Said obligation is undertaken by Husband in recognition of his general duty of support and because of the marital and family relationship of the parties, and also is in consideration of Wife's execution of this instrument. Support payments provided for herein shall not be modifiable by any court for any purpose whatsoever, and this provision constitutes an essential element and inducement for this integrated Marriage Settlement Agreement.

2. The bankruptcy court initially ruled that the payments under art. 8.01(A)(1) of $1,583.00 per month were dischargeable because they represented Mrs. Davidson's interest in the couple's

pension profit sharing plan. The court held that the payments under art. 8.01(A)(2) were not dischargeable because they were intended for support rather than equalization of property rights. After receiving motions from both sides, the bankruptcy court reconsidered and decided that all the periodic payments were dischargeable debt.

3. The court found that "significant evidence" had connected the payments to the couple's assets; that because the payments were not in round numbers they were not likely estimates of amounts needed for support; that the term of payments (ten years and one month) was unusual and important only to obtain tax deductions; and that the payments having been "treated in two separate provisions of the Agreement impl[ied] that they were derived through two separate processes."

4. If we were to reach the district court's findings regarding whether Mrs. Davidson had satisfied her burden in proving the payments nondischargeable, we would apply a clearly erroneous standard. *See Benich v. Benich (In re Benich)*, 811 F.2d 943, 946 (5th Cir.1987).

lished the alimony/division agreement. *Benich,* 811 F.2d at 945; *Smith v. Billingsley (In re Billingsley),* 93 B.R. 476, 477 (Bankr.N.D.Tex.1987).

■ Our holding in *Benich,* however, does not negate operation of the doctrine of estoppel. We reverse the district court and hold that Mr. Davidson is estopped from claiming that his payment obligations to Mrs. Davidson are not in the nature of alimony when he has treated the payments as alimony for tax purposes.

We are aware of only one bankruptcy court case with identical tax issues. *See Semrow v. Robinson (In re Robinson),* 122 B.R. 502 (Bankr.W.D.Tex.1990). As in this case, the periodic payments were set up to take advantage of the tax deductions; they would last only 120 months—the minimum length of deductible alimony payments under the tax code. Mr. Robinson, like Mr. Davidson, maintained the characterization of the payments as alimony and deducted them from his taxes until he declared bankruptcy. The bankruptcy court held that Mr. Robinson "should be estopped from now asserting these payments were mere *property* settlements, based upon his own characterization of the payments as alimony in his tax returns." *Id.* at 506. We agree.

■ One form of estoppel, "quasi estoppel," forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects. *See Kaneb Servs., Inc. v. FSLIC,* 650 F.2d 78, 81 (5th Cir. Unit A July 1981) (citing *FPC v. Colorado Interstate Gas Co.,* 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955)); *see also Neiman–Marcus Group, Inc. v. Dworkin,* 919 F.2d 368, 371 (5th Cir.1990) (explaining Texas law of quasi estoppel). Mr. Davidson has accepted the benefits of his agreement: He has taken tax deductions for the payments to Mrs. Davidson. He now tries to escape the bankruptcy effects of his election to treat the payments as alimony.

Although detrimental reliance is not a necessary element of quasi estoppel, we find that the existence of detrimental reliance in this case is an important factor disfavoring Mr. Davidson's position. Mrs. Davidson detrimentally relied upon the characterization of the payments as alimony. Indeed, the settlement agreement specifically provided that Mr. Davidson's intention to provide support to Mrs. Davidson was an "essential" element of consideration for the agreement.[5] Mrs. Davidson claimed the payments as income and paid the appropriate taxes in accordance with the settlement agreement.

To allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes. To uphold the discharge of those payments in bankruptcy would reward an admitted manipulation tantamount, at best, to deception. That Mr. Davidson did not know he would go broke when he agreed to the divorce settlement is not an uncommon scenario, but offers him no excuse for discharging the payments he chose to characterize as alimony.[6]

## IV.

■ The settlement agreement provided for the payment of attorneys' fees:

    10.3. *Fees and Expenses for Default.* In the event a party hereto defaults in performing any obligation under this Agreement requiring the other party to engage the services of an attorney to seek enforcement or relief, or enforcement is sought through the Probate Court, bankruptcy, receivership or any

---

5. Art. 8.05 of the agreement provides that "this provision constitutes an essential element and inducement for this integrated Marriage Settlement Agreement."

6. Since we decide this case on the ground of quasi estoppel, we do not reach the bankruptcy court's analysis of the intent of the Davidsons at the time they signed the agreement.

other judicial proceedings, then the defaulting party shall pay all reasonable attorney's fees, expenses and costs incurred.

Recently we have held that where a party has contracted to pay attorneys' fees for the collection of a nondischargeable debt, the fees also will not be discharged in bankruptcy. *Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 226–28 (5th Cir.1991). *See also Bell v. Bell (In re Bell)*, 61 B.R. 171, 177–78 (Bankr.S.D.Tex. 1986) (fees to collect alimony are nondischargeable because they are so intertwined with the obligation of support as to be in the nature of alimony); *Teter v. Teter (In re Teter)*, 14 B.R. 434, 437 (Bankr.N.D.Tex. 1981) (same). Mrs. Davidson should receive reasonable attorneys' fees, and we remand for determination of the fee amount.

Accordingly, the judgment is REVERSED and REMANDED for further proceedings consistent herewith.