PENNSYLVANIA HOUSE,
INC., Plaintiff,

v.

JUNEAU'S PENNSYLVANIA HOUSE,
INC., et al., Defendants.

Civ. A. No. 1:90cv620.

United States District Court,
E.D. Texas,
Beaumont Division.

April 17, 1992.

Michael W. Schultz, Robert J. Kruckemeyer, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, Tex., for plaintiff.

Carl A. Parker, Rife Scott Kimler, Port Arthur, Tex., for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Pennsylvania House, Inc. moves for rehearing on its motion for partial summary judgment.

Juneau's Pennsylvania House, Inc. was a dealer in Pennsylvania House furniture. At the time the dealership was created, Riley Juneau, Creola Juneau, and Robert Juneau personally guaranteed the dealership's debts to Pennsylvania House in an indemnity agreement drafted by Pennsylvania House. The dealership incurred significant debt with Pennsylvania House secured by inventory merchandise. The dealership later defaulted, and Pennsylvania House conducted a private sale of the collateral pursuant to a Consent to Private

Sale of Collateral. The proceeds from the sale were insufficient to extinguish the debts. Pennsylvania House now sues the dealership and the Juneaus for the deficiency.

The Juneaus asserted that the disposition was commercially unreasonable under § 9-504(1)(c) of the Uniform Commercial Code. Pennsylvania House moved for summary judgment on the grounds that the Juneaus waived the defense of commercial unreasonableness in the Consent to Private Sale. By order dated December 19, 1991, this court denied summary judgment because the right to a commercially reasonable sale of collateral is not waivable under Pennsylvania law. 782 F.Supp. 1195.

Pennsylvania House now moves for rehearing on three grounds: (1) that this court improperly applied Pennsylvania law to this dispute instead of Texas law, (2) that the Consent to Private Sale does not improperly waive the defense of commercial reasonableness, but rather articulates standards by which commercial reasonableness is to be measured, and (3) that benefit to the Juneaus from the Consent should estop the Juneaus from challenging the commercial reasonableness of the sale.

## CHOICE OF LAW

■ Pennsylvania House first raises the issue whether an action to enforce a guaranty agreement is governed by the choice of law provisions of that agreement or the law of the forum. The Texas rule is that the manifest intent of the parties to be bound by the law of another state will be respected. *Austin Bldg. Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex.1968). Section 11 of the Security Agreement and § 11 of the Accessory Security Agreement state:

This agreement shall be construed under and in accordance with the Pennsylvania Uniform Commercial Code and other applicable laws of the Commonwealth of Pennsylvania....

The Indemnity Agreement states, "This Agreement shall be construed under and in accordance with the laws of the Commonwealth of Pennsylvania...." These agreements express the intention of the parties that disputes arising from these agreements should be determined under Pennsylvania law.

Pennsylvania House relies on *Resource Savings Ass'n v. Neary*, 782 S.W.2d 897 (Tex.App.1989), for the proposition that transactions to enforce legal remedies against guarantors as opposed to against collateral are governed by the law of the forum. Plaintiff's reliance is misplaced. The court in *Resource Savings* construed a choice of law provision which provided for application of Texas law to all aspects of the transaction except for the enforcement of rights and remedies against certain real property in Georgia which were to be governed by Georgia law. Because a legal remedy was not being pursued against the Georgia property, the exception did not apply, and Texas law governed the dispute under the terms of the choice of law provision. The *Resource Savings* court did not face the situation where, as here, the plaintiffs sought to avoid the effect of a choice of law provision, drafted by the plaintiffs, which designated that all disputes arising from the transaction should be governed by another state's law.

Further, Pennsylvania House argues that this case does not call for *construction* of the agreements; rather, it is an action to *enforce* legal remedies created by the agreements. Such a distinction is mere semantics. This court refuses to recognize the artificial distinction between construction of the agreement and enforcing legal remedies under the agreement. To do so would defeat the entire purpose of the choice of law provisions in the agreements.

## COMMERCIAL REASONABLENESS

■ Second, Pennsylvania House argues that the Consent to Private Sale was not an impermissible waiver of the right to a commercially reasonable disposition of collateral; rather, the consent was an agreement as to the standards by which commercial reasonableness would be measured. Pennsylvania House concedes that it could not have the Juneaus waive Pennsylvania House's duty to conduct a commercially

reasonable disposition of the collateral. However, agreements as to the standards by which fulfillment of the duty of a commercially reasonable sale is to be measured are expressly permitted by the Code as long as the standards are not manifestly unreasonable. 13 Pa.Const.Stat. § 9501(c) (1980). Unfortunately for Pennsylvania House, a plain reading of the Consent to Private Sale reveals that the Consent does not set standards by which commercial reasonableness is to be determined. In relevant part, the Consent reads:

1. Riley B. Juneau, individually as guarantor, and as president of Juneau's Pennsylvania House, Inc.; Creola W. Juneau, individually as guarantor; and Robert J. Juneau, individually as guarantor, hereby consent to the private sale of all of the Inventory [of the dealership] ... Such private sale shall take place on or after April 6, 1990 for a price of $304,-572.08.

2. Riley B. Juneau, Creola W. Juneau and Robert J. Juneau in their individual and corporate capacities acknowledge that the private sale of the Inventory provided for in this Agreement is a "commercially reasonable" disposition of the Inventory as such term is defined in the Texas Uniform Commercial Code and each of them waives any and all rights to challenge such sale and waives their right to assert that the private sale of the Inventory by Pennsylvania House, Inc. to Robert Heinzmann was not in every aspect, including method, manner, time, place and terms, commercially reasonable.

The Consent merely states the date and price of the sale and recites a waiver of the right to challenge the commercial reasonableness of the sale. To the extent that the Consent purports to waive the right of the Juneaus to challenge the commercial reasonableness of the sale, it is invalid.

## QUASI–ESTOPPEL

Last, Pennsylvania House argues that because the Juneaus received certain benefits from the Consent to Private Sale, the Juneaus should not be permitted to challenge the Consent under the doctrine of quasi-estoppel. Quasi-estoppel forbids a party from accepting the benefits of a transaction or statute and then taking an inconsistent position to avoid the corresponding obligations or effects. *Matter of Davidson,* 947 F.2d 1294, 1297 (5th Cir. 1991).

Pennsylvania House compares the instant case to *Davidson,* enumerating the "benefits" that the Juneaus received from the sale: reduction of personal and corporate liabilities by $304,572.08, release from lease of premises, cessation of legal proceedings, maintenance of reputation in community because purchaser honored the Juneaus' obligations to the public, quick disposition of collateral, and ascertaining amount of ultimate liability. *Davidson* is distinguishable. The *Davidson* court held that when ex-husband has characterized divorce settlement payments as alimony for tax purposes and ex-wife has paid tax on them as income, he cannot later characterize them as a division of property for discharge of obligation in bankruptcy. *Id.* at 1297. There, the estopped party was forbidden to flip-flop between two legally permissible characterizations of certain payments depending on which was more immediately expedient. Here, although the Consent purportedly waives the commercial reasonableness defense, such a waiver is impossible under the Code. Benefit to the Juneaus cannot relieve Pennsylvania House of their duty. Any benefits which accrued to the Juneaus from the sale go to the ultimate issue of the commercial reasonableness of the sale itself, which is for the trier of fact.

Accordingly, Pennsylvania House's motion for rehearing is denied.