**In re Alan Raymond CUNNINGHAM, Debtor.**

**Alan Raymond CUNNINGHAM, Plaintiff,**

v.

**Debra Dee Brown, Defendant.**

Bankruptcy No. 90–42073–2.
Adv. No. 90–4212–2.

United States Bankruptcy Court,
W.D. Missouri.

June 15, 1992.

See also 125 B.R. 563.

Erlene W. Krigel, Kansas City, Mo., for plaintiff/debtor.

Maureen A. Monro, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

## BACKGROUND

This adversary action was tried by this Court and a decision issued on February 6, 1991. That decision was appealed and the matter is now before the Court on remand from the District Court. Alan R. Cunningham, the debtor and complainant herein and hereinafter referred to as debtor, elected to submit the matter upon the record and transcript. Debra Dee Brown, the de-

fendant and ex-spouse, hereinafter referred to as DDB, also asked the Court to decide the matter on the record and transcript, but did introduce brief testimony by DDB. Thereafter debtor testified briefly in rebuttal.

## FINDINGS OF FACT

The parties were married June 14, 1975. DDB was a medical technician, then employed at St. Lukes. She continued to work until 1978. From that time on she worked as a mother and home maker. The parties had one child in 1978 and one child in 1980. Debtor was an executive in the construction business. The parties separated in May of 1982. The District Court of Johnson County granted debtor an absolute divorce on December 15, 1982. Debtor promptly remarried. The state court reserved all of the issues of child custody, child support, division of real and personal property, alimony or maintenance. Debtor and DDB signed an agreement as to those issues on May 20, 1983. DDB promptly remarried.

Journal Entry was based on the twelve page agreement mentioned above, drawn by counsel who represented the parties and signed by the parties themselves. The agreement was broken into three parts. Part A was labeled as and pertained to child custody and child support. Part B was labeled as and pertained to maintenance. Part C was labeled as and pertained to division of property.

In Part B debtor was ordered to pay DDB the sum of $1,300.00 per month for 36 months or a total of $46,800.00 as maintenance. Additionally, debtor was ordered to pay DDB the sum of $2,000.00 on December 1st of each year for 7 years or a total of $14,000.00. None of the payments in Part B terminated upon remarriage of DDB or the death of debtor. The Court specifically relinquished jurisdiction to alter either award.

In Part C, debtor received certain personal property, an Audi automobile, and the stock in his employing company. In Part C, DDB received the family residence, all of the household goods except those family items that debtor was to get, a Volvo automobile and $3,400.00 cash.

During the divorce action in Kansas, DDB propounded interrogatories to debtor which he answered under oath on September 23, 1982. At that time debtor answered questions as to values of property the parties owned. Based on his sworn answers, the property in Part C valued out as of May 20, 1983, as follows:

| Debtor | Item | Source | DDB |
|---|---|---|---|
| | Family Residence | (Int. # 9 & # 20) | $ 91,545.00 |
| | Volvo Auto | (Int. # 11 & Test.) | $ 10,000.00 |
| | Household Goods | (Int. # 11) | $ 60,000.00 |
| $ 120,000.00 | Contrech, Inc. Stock | (Test.) | |
| $ 10,000.00 | Audi Auto | (Test.) | |
| | Cash | | $ 3,400.00 |
| $ 130,000.00 | | | $ 164,855.00 |

Testimony at the trial indicated that DDB sold the house and netted $55,000.00 rather than the $91,455.00. Assuming commissions, closing costs, etc. of 8%, the house probably grossed in 1984 about $67,000.00 ($150,000.00 less $83,455.00 mortgage). That would reduce the value of the property division going to DDB to $149,765.00.

Also, the figure for household goods needs to be adjusted because of testimony at the hearing where she agreed $3,000.00 was a fair figure. If you add the $60,000.00 and the $3,000.00 and divide by two to average it, in an attempt to reach a fair value, it would appear DDB actually received about $112,000.00. Of course, if one starts play-

ing the hindsight game, debtor's interest in the company stock was soon valueless or sharply reduced. For that reason as well as for the reason that only what the parties contemplated at the time of the awards, the Court puts little emphasis on finally realized values.

Debtor made certain of the payments called for in the divorce decree but then failed to continue paying. While debtor was making the payments, he deducted them on his tax return as maintenance and DDB listed them as income and paid income tax on them. After debtor defaulted, DDB sought registration of her Johnson County, Kansas, judgment in Missouri. The parties relitigated the issues in the Circuit Court of Platte County, Missouri, wherein DDB registered her foreign judgment. That litigation resulted in a Stipulation And Joint Motion To Modify filed September 22, 1986, wherein the following language is found:

> "6. The parties further agree that Defendant–Respondent (debtor) owed Plaintiff–Petitioner (DDB) a maintenance obligation, and there is also a maintenance arrearage. This maintenance obligation and arrearage has been the subject of litigation between the parties in this Court."

In addition to attempting to collect the money owed by debtor to DDB, the Platte County litigation reduced the child support from $500.00 per month per child to $350.00 per month per child. The decree also dealt with attorney fees incurred in the litigation regarding the maintenance arrearage. It provided that if debtor made certain payments over the next twenty-four months, attorney fees would not be awarded. Because debtor seeks to discharge these attorney fees, it causes the Court to assume that he made the payments decreed in Platte County with the same lack of devotion that he showed as to the Johnson County decree. There was, and is, no evidence before this Court as to the amount of any said attorney fees or whether DDB has pursued same or not.

Based on the foregoing, this Court finds that the award to DDB was for mainte-nance; that the attorney fees in Platte County were expended to protect and collect maintenance and child support.

## DISCUSSION

11 U.S.C. § 523 sets out the exceptions to discharge. One of those exceptions is found in 11 U.S.C. § 523(a)(5) and provides:

> "(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 401(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;"

Thus, awards made under the label of child support and maintenance (or awards allegedly in lieu thereof) must actually be such, or they are dischargeable. 11 U.S.C. § 523(a)(5)(B). The usual controversy is over unspecified awards that could be maintenance or could be part of the property distribution. Although jurisdiction to determine same is not exclusive with the Bankruptcy Court, the question is one to be determined under bankruptcy standards. *Williams v. Williams*, 703 F.2d 1055 (8th Cir.1983).

The initial posture of any proceeding involving an alleged § 523 exception to discharge is that the obligation is dischargeable and the burden to show the contrary is on the party seeking the exception. See *In re Kranz*, 100 B.R. 475 (Bkrtcy.E.D.Mo. 1989) and *In re Lineberry*, 9 B.R. 700

(Bkrtcy.W.D.Mo.1981). Therefore, DDB had the burden of proof.

The facts support her position. The original court awarded the sums in controversy as *maintenance*. The debtor claimed an income tax deduction for *maintenance*. DDB paid income tax on the sums she received as *maintenance*. The parties in Platte County referred to it as *maintenance*. The court in Platte County referred to it as *maintenance*. DDB testified she understood that it was *maintenance* and believed that the $1,300.00 per month was intended to support her while she once again became technically proficient in her occupational field as a medical technician.

■ As to the $2,000.00 per year, payable on December 1, 1983, and each December 1st thereafter for 7 years, DDB gave the most credible reason for same when she stated: "It was for Christmas." Debtor, when questioned by the Court, had no explanation for the specifics of said award.

Debtor, on the other hand, relied on three items of circumstantial evidence to show that the amount involved was actually a part of the division of the marital property. First, debtor based this on a post hoc determination of what DDB received from the sale of the family home 14 months after the award. At the time of the divorce, debtor was valuing the house at $175,000.00 with a first mortgage of $83,455.00 or a value of $91,545.00. Likewise back in 1983, debtor, under oath, stated that the furniture and furnishings had a value of $60,000.00. Because DDB netted only $55,000.00 for the home and valued the furnishings at some later date at $3,000.00, debtor postulates that the $60,-800.00 for what was labeled maintenance should be added to the $55,000.00 from the house, the $10,000.00 for the car and the $3,400.00 cash to equal the value of the stock and car which he received. One of the many problems with this is that by 1984, the Contrech stock was no longer worth $120,000.00 and debtor's income had dwindled to $55,000.00 per year. In fact, if the post hoc value of the debtor's stock is balanced against the post hoc value of the residence and furnishings, debtor got less of value than DDB.

The second point relied on by debtor was that the requirement to pay the $60,800.00 did not terminate upon the remarriage of DDB, the death of debtor and could not be reduced or increased by the Court at a later date. DDB, although she waited more than five months longer than debtor to remarry, did remarry two days after the formal agreement was executed. It would seem rather strange that she would agree to maintenance that would terminate two days later. As a corollary to this point, debtor suggests that he deducted the payments from his income tax return and debtor paid income tax on the payments because "everybody in Johnson County did it that way to reduce taxes" and his lawyer told him it was a legitimate tax savings device.

The third point relied on by debtor is the testimony of David Woodbury, an attorney who practices extensive domestic relations law in Johnson County, Kansas. It was Mr. Woodbury's expert testimony that Judge Woodward rarely granted substantial maintenance. However, he cited no cases in which one party had an income of $180,000.00 per year, the other party had not worked for five years, and would need refresher courses to resume the former occupation as a medical technician, and Judge Woodward declined to grant short term maintenance.

■ In addition to the Court's finding that the award in question is, in fact, an award of maintenance or support as those terms are used in the Bankruptcy Code, the Court also finds that Plaintiff is estopped to deny his characterization of the award as one constituting maintenance after accepting the tax benefits of such characterization. *See Federal Power Commission v. Colorado Interstate Gas Co.*, 348 U.S. 492, 75 S.Ct. 467, 473, 99 L.Ed. 583 (1955) (where Commission conditioned merger of gas companies on non-inclusion of certain losses in their cost of service for rate purposes, the company is estopped from challenging the validity of that condition after accepting the benefits of the Commission's

merger approval); *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir.1987) ("The doctrine estops a party who has full knowledge of the facts from accepting the benefits of a transaction, contract, or order and subsequently taking an inconsistent position to avoid corresponding obligations."). In *Davidson v. Davidson (Matter of Davidson)*, 947 F.2d 1294 (5th Cir.1991), the 5th Circuit analyzed a divorce agreement similar to the one under examination in this Court. The agreement clearly labeled the disputed award as alimony and the debtor had claimed the tax advantages which flow from such characterization. The court observed:

> To allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes. To uphold the discharge of those payments in bankruptcy would reward an admitted manipulation tantamount, at best, to deception.

*Matter of Davidson*, 947 F.2d at 1297. Estoppel is appropriate in this case as it was in *Davidson* because the divorce agreement in question clearly and unambiguously set forth the payments to DDB in Section B of the agreement labeled "Maintenance." Those payments were set out separately from other provisions in Section C of the agreement labeled "Division of Property." Moreover, Plaintiff himself characterized those payments as maintenance on his income tax returns and received the benefit of a healthy income tax deduction based upon that characterization. Plaintiff will not now be heard to say that those payments were not maintenance after he has reaped considerable personal benefit from that representation. This Court will not be party to such cynical manipulation of statutes designed to give a fresh start to an "honest but unfortunate debtor."

Mr. Woodbury quite correctly stated that in determining an award of money in a divorce case, there is a balance of many factors in determining whether the award is for a division of property or for maintenance. It is in striking this balance that the Court considers what the original agreement signed by counsel and parties called the award; what the Court granting the award called it; what the parties called it in subsequent Court proceedings; what the Court handling the subsequent proceedings called it; how each party handled the payments on his or her income tax returns; what the provisions regarding the marital property were; what the parties involved thought the values of the marital property were at the time the dissolution was granted and (perhaps both last and least) what the parties now recollect as their version of the basis for the award.

## CONCLUSIONS OF LAW

1. This is a core proceeding pursuant to Section 157(b)(2)(I) of Title 18 of the United States Code.

2. This Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334.

3. Whether any sum awarded in a dissolution proceeding is excepted from discharge under 11 U.S.C. § 523(a)(5) is a question to be determined under a federal standard of dischargeability.

4. The award in the Johnson County District Court to Debra Dee Brown, f/k/a Debra Dee Cunningham against Alan Raymond Cunningham is, based on the finding that it was for maintenance of the said Debra Dee Brown, NOT DISCHARGEABLE herein.

5. The award in the Johnson County District Court to Debra Dee Brown, f/k/a Debra Dee Cunningham against Alan Raymond Cunningham is, based on the finding that Plaintiff is estopped from claiming that the award was a division of property, NOT DISCHARGEABLE herein.

6. Any attorney fees, to the extent that they are reasonable and are awarded to her as such by the Circuit Court of Platte County, Missouri, were expended to protect and collect awards of maintenance and

child support. As such they are NOT DIS-CHARGEABLE herein.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.