In re Richard M. HORTON, Debtor.

ASSOCIATED GROCERS OF COLORADO, INC.; and Joseph M. Hill, Trustee, Plaintiffs,

v.

Richard M. HORTON, formerly known as Edward J. Levin, Defendant.

Bankruptcy No. 88–07376–H1–7.
Adv. No. 89–0472.

United States Bankruptcy Court, S.D. Texas, Houston Division.

April 16, 1993.

---

## *MEMORANDUM OPINION*

MANUEL D. LEAL, Chief Judge.

Before the Court is Plaintiff Associated Grocers Inc.'s Motion for Rehearing and Reconsideration of Final Judgment on 11 U.S.C. Section 523. Plaintiff's adversary complaint asserts objections to defendant Richard Horton's discharge pursuant to 11 U.S.C. Sections 727 and 523. This adversary was tried on June 15, 1992, and Final Judgment was entered on August 24, 1992. In that Final Judgment this Court denied Horton's discharge pursuant to § 727 and held that Associated Grocer's cause of action under § 523 against Horton was therefore moot. This Motion for Rehearing and Reconsideration deals only with that part of the Final Judgment which denied relief under § 523.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 as well as the District Court's general order of reference. This matter is a core proceeding under § 157(b)(2)(I).

Upon reconsideration of the Final Judgment entered on August 24, 1992, and after

hearing the testimony of the parties and reviewing the pleadings, this Court concludes that plaintiff has proven its prima facie case and is entitled to judgment in its favor on its § 523 cause of action. Entry of judgment and denial of discharge based on § 727 does not preclude entry of judgment in favor of plaintiff based on § 523.

*Background*

The evidence shows that Associated Grocers extended credit to the debtor and to entities with whom he was affiliated. (TR, at 72, 73). Associated Grocers is the owner and holder of a Promissory Note, an Agreement of Guaranty, and an Agreement and Agreement of Sublease. F.H. Markets was owned by a company called Market Equities, of which Horton was a principal. Under the Agreement of Guaranty, Horton personally guaranteed F.H. Markets' performance under open accounts for goods and services provided by Associated Grocers to F.H. Markets. An Agreement of Sublease reflects an agreement between Associated Grocers as sublessor and F.H. Markets as sublessee and is signed by Associated Grocers, F.H. Markets, Horton, and other related parties. Horton also executed a $5,440.00 Promissory Note evidencing the indebtedness of Horton and F.H. Markets to Associated Grocers.

Associated Grocers filed suit in Colorado state court to collect deficiencies pursuant to these instruments. Judgment was entered in the Colorado court on November 2, 1988 against all defendants (including F.H. Markets) except Horton as he had filed a voluntary Chapter 7 petition in bankruptcy on September 2, 1988. This judgment was admitted into evidence at trial. (TR, at 76).

*Discussion*

Horton argues that Associated Grocers has failed to prove its case for relief under § 523 and denies all of plaintiff's allegations to the contrary. Specifically, Horton denies that he executed the Agreement of Guaranty, which was notarized on April 24, 1984. Based on the credibility of the witnesses, this Court concludes based on the evidence presented that the signature on the Agreement of Guaranty is Horton's.

In its adversary complaint Adversary Grocers argues that Horton's indebtedness to Associated Grocers as embodied in the Colorado judgment is nondischargeable pursuant to § 523(a)(2)(A) and (B), (a)(4), and (a)(6). Pursuant to a Stipulation and Order signed on May 5, 1989, the time for filing complaints objecting to discharge and/or dischargeability was extended to July 20, 1989. This adversary proceeding was filed within the appropriate time period.

For a debt to be nondischargeable under Section 523(a)(2)(A) or (B), the plaintiff must prove 4 elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The 4 elements are:

(1) that the debtor made the representation and knew that the representation was false;

(2) that the debtor made the representation with the intent to deceive the creditor;

(3) that the creditor relied on the debtor's representation and the reliance was reasonable;

(4) that the creditor sustained a loss or damage as a result of relying on the debtor's representation.

Section 523(a)(2)(A, B).

**Elements #1 and #2**

Because the first two elements involve debtor's state of mind at the time the representation was made, they are inherently difficult to prove. The first issue is whether Horton knowingly made a false statement or statements regarding his capacity to guarantee the performance of F.H. Markets under the Promissory Note, Agreement of Guaranty, and Agreement and Agreement of Sublease. A related inquiry is whether Horton intended to deceive Associated Grocers regarding the contents of the financial statements and other documentation required as a condition of membership in the Associated Grocers co-op. The evidence adduced at trial persuaded the Court of Horton's fraudulent intent.

In connection with his transactions with Associated Grocers, debtor gave Associat-

ed Grocers false personal financial statements dated July 1, 1983, July 31, 1983, and June 30, 1984. Horton admits that these financial statements reflect assets which were not his. At the time Horton gave Associated Grocers the financial statements, much of the property described therein was owned by Horton's wife and other entities. (TR, at 142–143, 194–195, 197, 199–200). Horton testified that he did not own $2,000,000 in stock reflected on his financial statement (TR, at 193,197) but rather that he had rented the shares. Horton also stated that he did not own a Kachina doll collection listed on his financial statement but added it to the statement to "dress it up" (TR, at 194–95, 197). Also among the assets included in Horton's financial statements was a trust deed receivable worth approximately $468,000.00 (TR, at 200) which Horton testified that he did not individually own. Further, Horton disavowed ownership in a certificate of deposit worth $440,000.00 which was also included in his financial statements (TR, at 199). There is some evidence that Horton added $75,000.00 in personal assets—jewelry, art work and the like—to his statements to bolster his asset total (TR, at 83), even though the property was his wife's and not his.

■ In addition to these financial statements, the debtor presented to Associated Grocers a false appraisal of certain real estate which was to secure Associated Grocers' claims pursuant to the financing instruments (TR, at 78–81, 110). In pursuing the litigation in Colorado Associated Grocers attempted to contact the appraiser who had prepared the original back in 1983. Its investigation produced evidence that the appraiser could not be found and that the appraisal itself was not duly recorded. (TR, at 81, 110). Associated Grocers also required its members to provide a life insurance policy as a condition of membership, and Horton represented to Associated Grocers that a life insurance policy existed to secure Associated Grocers' claims. However, the policy never existed, and the papers concerning this policy were false. (TR, at 79). As with the financial statements, this Court concludes that debtor made (or caused to be made) the real estate appraisal and the life insurance policy with the intent to deceive Associated Grocers (TR, at 79, 81).

**Elements # 3 and # 4**

■ Pursuant to § 523(a)(2)(B), the plaintiff must also demonstrate actual and reasonable reliance on the debtor's representations. Associated Grocers reasonably and justifiably relied upon these false writings and was damaged as a result. Associated Grocers would not have loaned money to F.H. Markets or granted it co-op membership in the first instance had Horton not given his personal guaranty. (TR, at 73, 99). Additionally, had Associated Grocers known that the property appraisal was not accurate and that the financial statements submitted by Horton did not reflect his true net worth, it would not have extended credit to any of the entities with which Horton was involved. (TR, at 81, 82, 84, 99, 110).

■ The Colorado judgment supports the conclusion that Associated Grocers sustained damages as a result of its reliance on Horton's misrepresentations. These damages include $547,745.35 in unpaid principal and interest due on the Promissory Note through July 8, 1992; $2,694,142.63 representing the judgment entered on the Agreement of Guaranty, plus interest; and $63,719.41 for damages due to the breach of the sublease between F.H. Markets and Associated Grocers, plus prejudgment and postjudgment interest, for a total of $3,305,607.39 exclusive of costs and attorneys' fees.

Thus, Horton used writings regarding his financial condition and/or that of F.H. Markets which were materially false to deceive Associated Grocers and from it obtain money, property, and extensions of credit. Plaintiff has established that in reasonable and justifiable reliance upon Horton's representations, plaintiff entered into the Promissory Note, the Agreement of Guaranty, and the Agreement and Agreement of Sublease with Horton and entities owned and controlled by him. Plaintiff also ac-

cepted F.H. Markets as a member of the co-op based on fraudulent documents, and has sustained damages as a result. Accordingly, Horton may not discharge its debt to Associated Grocers.

Section 523(a)(4) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

■ Associated Grocers was a cooperative stock association whose members were dependent upon one another for the association's ongoing success. Each member guaranteed its debts to the association, and a personal guaranty was required of all officers, directors, and equity holders (TR, at 99). The members were responsible for providing accurate information as to their solvency. Therefore, the members of the association had a fiduciary relationship among themselves and with Associated Grocers itself. F.H. Markets was a member of this cooperative association, and as F.H. Markets' guarantor Horton owed a fiduciary duty to Associated Grocers. While acting in a fiduciary capacity, Horton engaged in fraud by misrepresenting his net worth. (TR, at 71–72). Thus, the indebtedness owed to Associated Grocers by Horton is nondischargeable pursuant to § 523(a)(4).

Pursuant to Section 523(a)(6):

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

■ Richard M. Horton knowingly, willfully and maliciously gave Associated Grocers false financial reports so that he could obtain money, property, and extensions of credit from Associated Grocers (TR, at 83, 194–195). Associated Grocers was injured as a result, and its claim against Horton is not dischargeable in bankruptcy.

### Damages and Attorneys' Fees

Based on the foregoing, Associated Grocers has been damaged and is entitled to recover the amount as reflected in its proof of claim, plus interest, costs and attorneys' fees under §§ 523(a)(2), (a)(4), and (a)(6). Plaintiff alleges that as of July 8, 1992, Horton was in default under the terms of the aforementioned instruments and indebted to Associated Grocers in the amount of $3,305,607.39 exclusive of costs and attorneys' fees. Plaintiff seeks recovery of $128,633.29 in attorneys' fees as agreed to under the terms of their existing contracts.

The total amount of indebtedness referred to above was the subject of testimony by Scott D. Dumler (TR, at 84), the court-appointed disbursing agent of Associated Grocers (appointed pursuant to Associated Grocers' confirmed Chapter 11 plan in 1989). He restated at trial the amounts awarded for the respective claims as set forth in the Colorado judgment (TR, at 77) and testified that this judgment included prejudgment and postjudgment interest as well.

■ According to the Fifth Circuit, when a party has contracted to pay attorneys' fees for the collection of a non-dischargeable debt, the fees will likewise not be discharged in bankruptcy. *Davidson v. Davidson*, 947 F.2d 1294, 1298 (5th Cir. 1991), citing *Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 226–28 (5th Cir.1991). See also, *Matter of Luce*, 960 F.2d 1277, 1286 (5th Cir.1992). All of the financing instruments executed by Horton individually and/or on behalf of F.H. markets provide for the recovery of attorneys' fees associated with collecting on any amounts due under them. The parties in the case at bar have contracted for the payment of attorneys' fees in the event Horton defaults on the amounts due and owing under the Promissory Note, Agreement of Guaranty, and Agreement and Agreement of Sublease. Thus, Associated Grocers is entitled to recover its attorneys' fees, and these fees are nondischargeable.

Counsel for Associated Grocers, Arlette Molina, testified that her attorney fees are reasonable considering the nature of this case. She explained that she had expended approximately 100 hours as of the date of trial at a reduced billing rate of $95 per hour on this case. In addition, Ms. Molina stated there are $2,000 in costs in this case (TR, at 153). Horton declared that he did not object to her fees (TR, at 154). Ms. Molina and Mr. Dumler testified regarding the reasonableness and the amount of fees paid by Associated Grocers to a law firm now known as Babcock and Henderson (TR, at 153 and 89–90). This firm billed $75,133.29, and its billing statements were admitted into evidence (TR, at 90). Additionally, special counsel was retained by Associated Grocers, as was an investigator, and their fees and expenses were in the range of "42,000 to 45,000". (TR, at 89). Given the above testimony and other documentary evidence, this Court awards $128,-633.29 in attorneys' fees and costs to counsel for the plaintiff.

### JUDGMENT

Came on for consideration the Plaintiff's Motion For Rehearing and Reconsideration of Final Judgment on 11 U.S.C. § 523. After careful consideration the Court grants the Motion and renders judgment in favor of Associated Grocers on its § 523 cause of action.

Associated Grocers is therefore awarded the amount as claimed in its proof of claim plus prejudgment and postjudgment interest thereon. Additionally, the testimony at trial supports an award of attorneys' fees and costs to counsel for Associated Grocers in the amount of $128,633.29. This judgment is nondischargeable pursuant to 11 U.S.C. § 523.