**In re Williem R. KELLEY d/b/a Kelley Chiropractic, Rebecca A. Kelley, Debtors.**

**Jolane KELLEY, Plaintiff,**

**v.**

**Williem Ronald KELLEY, Defendant.**

**Bankruptcy No. 97–33066.
Adversary No. 97–3213.**

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 14, 1998.

Hodges, Doughty & Carson by Thomas H. Dickenson, Knoxville, TN, for Plaintiff.

John P. Newton, Jr., Knoxville, TN, for Defendant.

### MEMORANDUM ON § 523(a)(5) ALIMONY ESTOPPEL ISSUE

RICHARD STAIR, Jr., Chief Judge.

The Plaintiff, Jolane Kelley, commenced this adversary proceeding with the filing of a Complaint on October 17, 1997. By her Complaint, the Plaintiff seeks a determination that a monthly obligation in the amount

of $1,539.00 owed by the Debtor, Williem R. Kelley, to the Plaintiff pursuant to a September 8, 1992 Agreed Order entered by the Chancery Court for Knox County, Tennessee, is nondischargeable under the authority of 11 U.S.C.A. § 523(a)(5) or (a)(15) (West 1993 & Supp.1997). On November 24, 1997, the Plaintiff filed a Motion for Issuance of Preliminary Injunction or, Alternatively, for Modification of the Discharge Injunction seeking a preliminary injunction compelling the Debtor to make the monthly payment in compliance with the September 8, 1992 Agreed Order. Alternatively, the Plaintiff, by this motion, sought a modification of the discharge injunction of 11 U.S.C.A. § 524(a)(2) (West 1993) to permit her to prosecute a state court contempt action against the Debtor for his alleged failure to make the $1,539.00 monthly payment. Following a December 18, 1997 status conference, the Plaintiff withdrew her November 24, 1997 motion for injunctive relief pursuant to the terms of an agreed Scheduling Order entered on December 29, 1997. Paragraph two of the Scheduling Order defines the issues in this proceeding as follows:

> The issues to be decided in this case are (a) whether the Defendant is estopped to deny that the payments of $1,539.00 per month (required by the Order entered September 8, 1992[,] in the parties' state court divorce proceeding) are nondischargeable as alimony and (b) if Defendant is not estopped from denying that the payments in question are alimony, whether said payments are otherwise nondischargeable under the provisions of 11 U.S.C. § 523(a)(5) or (15)?

The court, at the parties' request, has elected to address first the potentially dispositive estoppel issue as a matter of law and then, if necessary, hold a trial on all remaining issues on January 28, 1998. The parties have fully briefed the estoppel issue and have stipulated through the Scheduling Order and a written Stipulation filed January 2, 1998, the following documents: (1) a January 4, 1991 Final Judgment entered by the Chancery Court for Knox County, Tennessee, in the case of *Williem Ronald Kelley v. Jolane L. Kelley*, No. 106521–1, and a September 28, 1990 Marital Dissolution Agreement between

Jolane L. Kelley and Williem Ronald Kelley attached as an exhibit thereto; (2) a September 8, 1992 Agreed Order entered by the Chancery Court for Knox County, Tennessee, in the case of *William Ronald Kelley v. Jolane L. Kelley*; and (3) the parties' federal income tax returns for the tax years of 1992 through 1996.

This is a core proceeding under 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

**I**

The Plaintiff and the Debtor were divorced pursuant to a January 4, 1991 Final Judgment entered by the Chancery Court for Knox County, Tennessee. The rights and obligations of the parties with respect to issues of, among other things, custody, child support, alimony, and division of property were set forth in a September 28, 1990 Marital Dissolution Agreement and later incorporated into the January 4, 1991 Final Judgment. On September 8, 1992, the Chancery Court for Knox County, Tennessee, entered an Agreed Order tendered by the parties which purports to resolve a petition filed by the Debtor for custody of the parties' minor child as well as a petition filed by the Plaintiff against the Debtor for contempt for an alleged failure and refusal to comply with certain obligations and expenses imposed by the January 4, 1991 Final Judgment. The Agreed Order provides in material part:

> As to the Petition filed by ... Jolane Kelley Fender, it is, hereby, ORDERED, ADJUDGED AND DECREED as follows:
>
> 1......
>
> That [Williem Ronald Kelley] is further ordered to pay to [Jolane L. Kelley], pursuant to the Marital Dissolution Agreement, the sum of One Hundred Fifty Thousand Dollars ($150,000.00). Said payments shall be paid as follows: Thirty Thousand Dollars ($30,000.00) to be paid within thirty (30) days or as soon as possible upon the entering of this Order. The remaining One Hundred Twenty Thousand Dollars ($120,000.00) shall be paid to her in the monthly installments over a thirteen (13) year period at the rate of eight percent (8%) interest for a total payment of

One Thousand Two Hundred Thirty–Nine Dollars ($1,239.00) per month. Said payments shall be considered as being paid to [Jolane L. Kelley] in the form of alimony in futuro to be paid to her. However, the parties agree that said payments shall be non-modifiable by the parties. As additional alimony, [Williem Ronald Kelley] shall pay to [Jolane L. Kelley] the sum of Three Hundred Dollars ($300 .00) per month for a total payment of One Thousand Five Hundred Thirty–Nine Dollars ($1,539.00) per month for a period of thirteen (13) years. Said payments shall be non-modifiable in the event of the death of [Williem Ronald Kelley] or [Jolane L. Kelley] and shall be a liability against his estate for the payment of said funds to [Jolane L. Kelley]. [Williem Ronald Kelley] may make advanced payments as he wishes until the full One Hundred Twenty Thousand Dollars ($120,000.00) is paid. In the event of the death of ... Jolane Kelley ... Williem Kelley ... shall continue to pay any remaining balance due and owing to the estate of [Jolane L. Kelley].

. . . .

8. That once the marital residence is vacated by [Jolane L. Kelley] and the Fifty Thousand Dollars ($50,000.00) is paid to her as well as the other funds, the alimony payments due and owing to her under the Marital Dissolution Agreement will be terminated.

The Debtor's federal income tax returns for the years 1993 through 1996 reflect that he claimed a deduction from gross income for "alimony" payments made to the Plaintiff. The Plaintiff's federal income tax returns for the years 1992 through 1996 reflect that she claimed as income "alimony" payments received from the Debtor.

## II

The sole issue before the court today is whether the Debtor is estopped from arguing that the $1,539.00 monthly obligation to the Plaintiff, arising from the September 8, 1992 Agreed Order, represents a property settlement as opposed to alimony, maintenance or support where the Debtor has claimed an "alimony" deduction on his federal income tax returns for the years 1993 through 1996 for payments made to the Plaintiff in accordance with the obligation. The Plaintiff contends that the Debtor is precluded from taking a position that the $1,539.00 obligation is anything other than alimony by virtue of the doctrine of quasi-estoppel.

■ The doctrine of quasi-estoppel "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *Davidson v. Davidson (In re Davidson)*, 947 F.2d 1294, 1297 (5th Cir.1991). This doctrine has been applied in dischargeability actions to preclude a debtor, who has reaped the benefit of a federal income tax deduction for payments made to a former spouse, from later arguing in bankruptcy court that the payments did not constitute alimony, maintenance or support, which would be nondischargeable under the authority of 11 U.S.C.A. § 523(a)(5) (West 1993 & Supp. 1997). *See*, e.g., *Robb–Fulton v. Robb (In re Robb)*, 23 F.3d 895 (4th Cir.1994); *Davidson*, 947 F.2d at 1294; *Nowak v. Nowak (In re Nowak)*, 183 B.R. 568 (Bankr.D.Neb.1995); *Cunningham v. Brown (In re Cunningham)*, 141 B.R. 671 (Bankr.W.D.Mo.1992); *Semrow v. Robinson (In re Robinson)*, 122 B.R. 502 (Bankr.W.D.Tex.1990). The reasoning behind these decisions has been stated as follows:

To allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes. To uphold the discharge of those payments in bankruptcy would reward an admitted manipulation tantamount, at best, to deception.

*Davidson*, 947 F.2d at 1297.

The Ninth Circuit Bankruptcy Appellate Panel has rejected this line of cases, holding that "[t]he parties' characterization of [payments made and received pursuant to a divorce decree] on their tax returns is merely

evidence of their intent regarding the transaction, and does not act to estop the party from taking a subsequently different position." *Kritt v. Kritt (In re Kritt)*, 190 B.R. 382, 388 (9th Cir. BAP 1995). The *Kritt* court provided three reasons for its refusal to apply the principle of quasi-estoppel where the debtor claimed that his former wife was estopped from arguing that an obligation arising from their divorce decree constituted alimony because she failed to claim past payments on the obligation as income on her federal income tax return. First, the court reasoned that the doctrine of quasi-estoppel conflicts with the bankruptcy court's obligation to look behind the form of the agreement, including the labels attached to the transaction by the parties in state court, to determine the true intent of the parties. *Id.* Second, the court noted that the doctrine of quasi-estoppel looks only to the equities between the parties and fails to account for larger interests of society as a whole that serve as important policies for § 523(a)(5). *Id.* Finally, *Kritt* was concerned that the doctrine of quasi-estoppel could lead to inconsistent results in a case similar to the one before it. *Id.* Specifically, the court envisioned a result where the bankruptcy court, applying principles of quasi-estoppel, would find a divorce obligation to be a nondischargeable property settlement because the nondebtor spouse who received such payments failed to claim the payments as income on a tax return while another court might assess the nondebtor spouse for back taxes, after looking beyond form and to the substance of the transaction, on the theory that the payments received did in fact constitute alimony even though not claimed as such. *Id.* at 389 n. 6.

Similar to *Kritt*, the Tenth Circuit chose not to apply the quasi-estoppel doctrine in *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717 (10th Cir.1993). The Tenth Circuit, after examining the Fifth Circuit's decision in *Davidson*, noted that "[t]his reasoning would seem to apply with equal force to the facts of the present case, and we, like the Fifth Circuit have a strong aversion to sanctioning a sham transaction which we would effectively be doing if we [refuse to hold that the debtor is estopped from claiming that the payments did not constitute alimony]." *Id.* at 724 n. 6. Notwithstanding, the court concluded that the doctrine of quasi-estoppel did not apply since " § 523(a)(5) requires federal courts to look beyond the labels." *Id.* Instead, like *Kritt*, the Tenth Circuit concluded that the debtor's income tax deductions for payments made pursuant to a divorce decree amounted to further evidence of the parties' intent to have the divorce obligation serve as alimony, maintenance or support. *Id.*

This court, similar to *Kritt* and *Sampson*, concludes that the doctrine of quasi-estoppel does not preclude a party to a divorce proceeding from claiming federal income tax benefits resulting from payments made or received as a result of an obligation incurred pursuant to a divorce decree while simultaneously arguing that the obligation possesses an alternative definition under the Bankruptcy Code. This court agrees with *Kritt* and *Sampson* that the doctrine of quasi-estoppel precludes the bankruptcy court from fulfilling its obligation to look behind the labels attached to an obligation arising from a state court divorce decree. *See Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983) (noting that the legislative history to § 523(a)(5) is "unequivocal" in its support of the principle that whether an obligation arising from a divorce decree is "in the nature of alimony, maintenance, or support" is a question to be determined exclusively under federal bankruptcy law); *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 521 (6th Cir.1993) (concluding that where an obligation is denominated as alimony in a divorce decree, the sole issue for the bankruptcy court to resolve is whether the parties truly intended the obligation to serve as alimony as opposed to a property settlement in disguise). If the parties to a dischargeability action are not estopped by the label attached to the obligation in the very document that created the obligation, it seems incongruous to hold that they are nevertheless estopped by the label attached to the obligation by a federal income tax return that is wholly unrelated to the divorce proceeding.

Even more persuasive, however, is an argument that the case law has overlooked.

As noted previously, quasi-estoppel "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *Davidson*, 947 F.2d at 1297. This court does not believe that a per se rule can be adopted holding that a debtor takes an "inconsistent position" every time he or she claims a deduction on a federal income tax return for payments made in fulfillment of an obligation arising from a divorce decree only later to argue, for the purposes of dischargeability, that the obligation was intended by the parties to be something other than alimony, maintenance or support. Specifically, the court can envision situations where a debtor is entitled to an "alimony" deduction under the Internal Revenue Code even though the Bankruptcy Code establishes that the obligation giving rise to the deduction is not in the nature of alimony, maintenance or support. This result is possible simply because the Internal Revenue Code and the Bankruptcy Code define the term "alimony" differently.

For federal income tax purposes, a deduction for alimony payments arises under the authority of 26 U.S.C.A. § 62(a)(10) (West Supp.1997), which provides:

> For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:
>
> . . . .
>
> (10) **Alimony.**—The deduction allowed by section 215.

Section 215 of the Internal Revenue Code provides in material part:

> (a) **General rule.**—In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.
>
> (b) **Alimony or separate maintenance payments defined.**—For purposes of this section, the term "alimony or separate maintenance payment" means any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71.

26 U.S.C.A. § 215(a) & (b) (West 1988). Section 71(b) of the Internal Revenue Code provides in material part:

> **Alimony or separate maintenance payments defined.**—For purposes of this section—
>
> (1) **In general.**—The term "alimony or separate maintenance payment" means any payment in cash if—
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

26 U.S.C.A. § 71(b)(1) (West 1988). On the other hand, the Bankruptcy Code looks to the intent of the parties at the time that the obligation was created to determine whether it is in the nature of alimony, maintenance or support. *Fitzgerald*, 9 F.3d at 520–21; *Calhoun*, 715 F.2d at 1109; *Patrick v. Middleton (In re Patrick)*, Ch. 7 Case No. 96–34785, Adv. No. 97–3027, slip op. at 12 (Bankr. E.D.Tenn. Oct. 24, 1997) ("Bankruptcy courts within the Sixth Circuit have construed *Fitzgerald* to stand for the proposition that if an obligation within a separation agreement is expressly denominated as a support obligation then the court need only apply the first step of the *Calhoun* analysis to determine whether the parties intended to create a support obligation.").

It is not inconceivable to encounter a situation where the parties to the state court divorce proceeding, regardless of the label they give an obligation, intended for the obligation to serve as a property settlement and yet, the very same obligation falls within the definition of "alimony or separate maintenance" set forth in § 71(b)(1) of the Internal Revenue Code. It is true that one factor that bankruptcy courts may consider when analyzing the intent of the parties is whether the obligation is structured to end upon the death or remarriage of the payee spouse. *See Fitzgerald,* 9 F.3d at 521. However, this is one of a number of factors that is relevant in determining the intent of the parties. *See,* e. g., *Fitzgerald,* 9 F.3d at 521; *Calhoun,* 715 F.2d at 1108 n. 7, 1109. Given the possibility that an obligation terminating upon the death of the payee spouse could nevertheless be defined under the Bankruptcy Code as a property settlement that is not in the nature of alimony, maintenance or support, it is quite possible that such an obligation could serve as alimony under the Internal Revenue Code and a property settlement under the Bankruptcy Code without creating any inconsistencies. Accordingly, the adoption of a per se rule of quasi-estoppel would not be proper.

Similar to the Tenth Circuit, this court is reluctant to sanction a sham transaction. *See Sampson,* 997 F.2d at 724 n. 6. However, simply because the doctrine of quasi-estoppel has no application to a dischargeability action does not mean that the court is left with no choice but to approve improper manipulations of the Bankruptcy and Internal Revenue Codes. Such manipulations, if they exist, serve as evidence of the parties' intent to create an obligation consistent with the manipulative effort. *See Sampson,* 997 F.2d at 724; *Kritt,* 190 B.R. at 388. This approach protects against manipulations while preserving legitimate rights that may be consistently claimed under both the Bankruptcy and Internal Revenue Codes. Accordingly, the court holds that the Debtor is not barred by the doctrine of quasi-estoppel from arguing that the monthly obligation he owes to the Plaintiff is not in the nature of alimony, maintenance or support even though the Debtor has claimed an "alimony" deduction for prior payments of the same obligation on his federal income tax returns for the years 1993 through 1996.

An appropriate order will be entered. This matter will proceed to trial on January 28, 1998, on the § 523(a)(5) or (a)(15) issues.