**In re Jonathan King BAILEY, Debtor.**

**Diana Lynn Bailey, Plaintiff,**

v.

**Jonathan King Bailey, Defendant.**

**Bankruptcy No. 01–05230–M.**
**Adversary No. 02–0030–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

Nov. 8, 2002.

---

**8.** This rule tracks the language of Fed. R.Civ.P. 11 and, for example, would allow sanctions for undue delay or harassment.

James Potts, Jr., Tulsa, OK, for Plaintiff.

Carl A. Barnes, Tulsa, OK, for Defendant.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL,
Bankruptcy Judge.

THIS MATTER came before the Court for trial on October 23, 2002. Plaintiff Diana Lynn Bailey ("Plaintiff" or "Ms. Bailey") appeared personally and through her attorney, James Potts, Jr. Defendant Jonathan King Bailey ("Defendant" or "Mr. Bailey") appeared personally and through his attorney, Carl A. Barnes. The Court received evidence and heard argument from the parties. The Court also considered the facts stipulated to by the parties in the Pre–Trial Order filed in this action on August 15, 2002. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C.A. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

## Burden of Proof

The United States Court of Appeals for the Tenth Circuit has ruled that

> Exceptions to discharge are to be narrowly construed, so as to effect the "fresh start" purpose of bankruptcy. *Jones*, 9 F.3d at 880. The policy underlying § 523(a)(5), however, favors enforcement of familial support obligations over a "fresh start" for the debtor. *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 722 (10th Cir.1993). "Further, the objector to discharge has the burden of proving by a preponderance of the evidence that a debt is not dischargeable." *Jones*, 9 F.3d at 880.

*See Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1489 (10th Cir.1995), *cert. denied*, 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995).

## Findings of Fact

The parties to this action were formerly husband and wife, having been married on March 21, 1983. Prior to the marriage, Ms. Bailey worked for a security firm and also held an interest in an automobile repair business. At some time shortly after the parties were married, they formed an electronics repair business called Electronic Services of Tulsa ("EST"). Mr. Bailey performed repair services on behalf of EST, while Ms. Bailey acted as the office

manager, handling bookkeeping duties for the company. Sometime after its inception, EST was incorporated under the laws of the State of Oklahoma, with all stock being equally owned by Mr. and Ms. Bailey. Due to the efforts of both parties, the business of EST grew.

The marriage fell on hard times. On July 15, 1996, Ms. Bailey filed an action for divorce (the "Divorce Action") in the District Court in and for Tulsa County, Oklahoma (the "State Court"), naming Mr. Bailey and EST as defendants. At the time the Divorce Action was filed, there were no minor children born of the marriage. On June 9, 1998, the State Court entered its Decree of the Divorce (the "Decree").[2] According to the Decree, the parties settled by mutual agreement all claims "concerning property division, debt division, spousal support, attorney fees and costs," and those agreements were incorporated into the Decree without alteration. *See Pl's Exh. 2–1.*

Under the terms of the Decree, Mr. Bailey was awarded all right, title and interest in EST. The Decree further provided that Mr. Bailey would pay Ms. Bailey the sum of $90,000.00 (the "$90,000 Award") under the following terms and conditions:

> [T]he Defendant [Mr. Bailey] should pay the Plaintiff [Ms. Bailey] $90,000.00 as and for alimony payments in lieu of division of Electronic Services of Tulsa, Inc., payable in the following amounts and subject to the following terms and conditions;
>
> a) Defendant shall receive a credit for the actual net cash value, as of the date of withdrawal, of the Defen-

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2002).

2. Although the Decree was filed on June 9, 1998, it recites that the matter actually came before the Court on March 24, 1998, some two and one-half months earlier.

dant's whole life and target life insurance policies held by New York Life Insurance Company policy numbers 43461897 and 62536922 respectively of which those net cash values are awarded to the Plaintiff under the terms of the parties division of marital property;

b) Defendant shall receive a credit for the actual cash value of the Defendant's Sun America Life Insurance Company IRA Deferred Annuity, account number A637068298A, to be transferred in its entirety to the Plaintiff by virtue of a Qualified Domestic Relations Order and pursuant to the terms of the parties division of marital property;

c) Defendant shall receive a credit for one-half (1/2) of the 1997 state and federal tax liability of the parties which he is assuming in its entirety pursuant to the terms of the parties division of marital debt;

d) The Defendant shall secure a loan for the balance of the $90,000.00 support alimony judgment and shall secure said loan prior to April 30, 1998; and

e) In the event that the Defendant can not secure a loan to satisfy the balance of the support alimony judgment then beginning on the 1st day of May, 1998 and continuing on the first day of each month thereafter until the full amount of the support alimony judgment is satisfied, or until the Defendant secures a loan to satisfy the support alimony judgment in full, the Defendant shall pay to the Plaintiff $2,000.00 per month, as well as interest.

See Pl's Exh. 2–4—2–5. The Decree also provided that Ms. Bailey would continue to be employed by EST until April 30, 1998,

and be paid $2,300 per month for her services.

Plaintiff and Defendant provided the Court with completely different versions of their intent behind the $90,000.00 Award. According to Mr. Bailey, the $90,000 Award was meant to compensate Ms. Bailey for her interest in EST. The parties had vastly differing views of the value of EST. Ms. Bailey retained an expert who provided an opinion that EST had a value of $400,000, while the accountant employed by EST and Mr. Bailey advised Mr. Bailey that the value of EST was closer to $100,000. Mr. Bailey testified that the $90,000 Award represented a compromise between the parties and that the issue of support for Ms. Bailey was never specifically discussed. Ms. Bailey has a different recollection of events. She testified that the $90,000 Award was intended to provide her with a means of support while she prepared herself to re-enter the work force. In addition, Ms. Bailey testified that the time frame for payments set out in the Decree (45 months) was designed to provide income to her during the anticipated "transition period."

Upon entry of the Decree (and perhaps even before), Mr. Bailey began efforts to satisfy the $90,000 Award. On or before June 15, 1998, he had paid not less than $31,971.90 to Ms. Bailey in partial satisfaction of the $90,000 Award. See Pl's Exh. 18–1. Thereafter, Mr. Bailey made a total of not less than fourteen payments in the amount of $2,000.00 to Ms. Bailey.[3] See Pl's Exh. 18–2—18–6. Both Mr. and Ms. Bailey treated at least twelve of the $2,000.00 payments as alimony for income tax purposes, with Mr. Bailey taking a deduction from his income for each such payment made and Ms. Bailey declaring

---

3. Mr. Bailey was either unable or unwilling to borrow the necessary funds to complete payment of the $90,000 Award as contemplated in the Decree.

each such payment as income. *See Pl's Exhs. 4 and 6.* None of the $31,971.90 was treated as alimony for tax purposes by either party.

As the Divorce Action was winding down, Ms. Bailey began to work for her brother's business. Ms. Bailey was paid no monetary compensation by her brother until her severance from EST in April of 1998. In March of 2000, she left that employment for another position. In 1999, Ms. Bailey had total wages of $21,374.00. During calendar year 2000, Ms. Bailey earned wages of $27,591.00. The parties did not present any evidence regarding Ms. Bailey's income after 2000.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

 Ms. Bailey argues that the $90,000 Award constitutes non-dischargeable alimony, maintenance or support under the terms of § 523(a)(5) of the Bankruptcy Code.[4] The question of non-dischargeability of alimony, maintenance and support is a question of federal, not state, law, although a bankruptcy court may look to state law for guidance on these issues. *See Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir.1993). In order to make the appropriate determination, this Court must apply the following two part test:

> First, the court must divine the spouses' shared intent as to the nature of the payment. This inquiry is not limited to the words of the settlement agreement, even if unambiguous. Indeed, the bankruptcy court is required to look behind the words and labels of the agreement in resolving this issue. Second, if the court decides that the payment was intended as support, it must then determine that the substance of the payment was in the nature of support at the time of the divorce—i.e., whether the surrounding facts and circumstances, especially financial, lend support to such a finding.

*See Young v. Young (In re Young),* 35 F.3d 499, 500 (10th Cir.1994) (hereafter *"Young"*) (citing *Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 722–726 (10th Cir.1993)). "This determination must be made by looking at the substance of the agreement 'viewed in the crucible of surrounding circumstances.' " *See Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir.1986) (citation omitted). Our court of appeals has held that

> Several factors are pertinent to the bankruptcy court's determination of whether the debt is support: (1) if the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the cir-

---

4. Section 523(a)(5) provides that

 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

 . . . .

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a govern-

 mental unit, or property settlement agreement, but not to the extent that—
 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

cumstances that the spouse needs support; (2) when there are minor children and an imbalance of income, the payments are likely to be in the nature of support; (3) support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and (4) an obligation that terminates on remarriage or death is indicative of an agreement for support. *See Goin v. Rives (In re Goin)*, 808 F.2d 1391, 1392–93 (10th Cir.1987) (citation omitted). The Court will consider these factors as it determines the nature of the $90,000 Award.

Turning to the issue of the parties' intent, the testimony of the parties is conflicting. Ms. Bailey claims that she intended the $90,000 Award to operate as support, while Mr. Bailey staunchly contends that no such understanding ever existed. However, several facts in this case establish that the $90,000 Award was intended as a division of property, specifically as a vehicle to compensate Ms. Bailey for the award of EST to Mr. Bailey. The most persuasive of these is the existence of EST. EST was a business built from scratch by Plaintiff and Defendant over the life of their marriage. It provided full-time employment and significant income to both parties. EST had a value at the time of the Divorce Action of between $100,000 and $400,000. If the $90,000 Award was in the nature of support, it must follow that Ms. Bailey agreed to receive nothing in exchange for the surrender of her ownership interest in EST to Mr. Bailey. Such a result would be directly contrary to the terms of the Decree, which was an embodiment of the parties' agreement.

In addition, the $90,000 Award has few of the earmarks of support outlined in *Goin.* Defendant's obligations under the $90,000 Award did not terminate upon the death or remarriage of Ms. Bailey. There were no minor children of the marriage at the time of divorce. Under the terms of the Decree, the $90,000 Award was to be paid in full on or before May 1, 1998; monthly payments were to commence only if Mr. Bailey was unable to secure financing to pay the $90,000 Award in full. The number of monthly payments was not calculated based upon any need for support of Ms. Bailey; instead, it was based upon the remaining balance due after liquidation of assets under the terms of the Decree. The more assets liquidated by Mr. Bailey, the more money would be applied to the $90,000 Award, and the fewer the number of required monthly payments. These facts support a conclusion that the $90,000 Award is in the nature of a property settlement, representing payment to Ms. Bailey for her interest in EST.[5]

The principal fact which supports the argument that the $90,000 Award constitutes support is the treatment of the monthly payments as alimony for tax purposes. Two separate schools of thought have evolved on this issue. Several courts have taken the position that the claiming of a payment as alimony on a tax return estops a party from ever taking a contrary position. The most oft-cited case espousing this position describes it as follows:

> One form of estoppel, "quasi estoppel," forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent po-

---

**5.** The Court also notes that the Decree required the payment of interest on the $90,000 Award in the event it was paid in monthly installments. The accrual of interest on an obligation is consistent with the repayment of a debt, and is equally inconsistent with the concept of alimony or support (unless, of course, such payments are not made when due).

sition to avoid the corresponding obligations or effects.

\* \* \* \* \* \*

To allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes. To uphold the discharge of those payments in bankruptcy would reward an admitted manipulation tantamount, at best, to deception.

*Davidson v. Davidson (In re Davidson),* 947 F.2d 1294, 1297 (5th Cir.1991) (citations and footnotes omitted). Several courts have adopted the *Davidson* rationale. *See Robb–Fulton v. Robb (In re Robb),* 23 F.3d 895, 898–99 (4th Cir.1994); *Chance v. White (In re White),* 265 B.R. 547, 554–55 (Bankr.N.D.Tex.2001); *Nowak v. Nowak (In re Nowak),* 183 B.R. 568, 570–71 (Bankr.D.Neb.1995); *Holloway v. Kelley (In re Kelley),* 151 B.R. 790, 791 (Bankr.S.D.Tex.1992); *Cunningham v. Brown (In re Cunningham),* 141 B.R. 671, 675–76 (Bankr.W.D.Mo.1992); *Semrow v. Robinson (In re Robinson),* 122 B.R. 502, 506 (Bankr.W.D.Tex.1990). The United States Court of Appeals for the Tenth Circuit, in *dicta,* has indicated its rejection of the approach outlined in *Davidson. See Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 725 n. 6 (10th Cir.1993) ("§ 523(a)(5) requires federal courts to look beyond labels" in determining whether a payment is alimony or support for discharge purposes).

■ Other courts have rejected the doctrine of "quasi-estoppel," and have taken the position that the characterization of a payment as alimony for income tax pur-

poses is but one factor to be considered in determining the true nature of the award. The Bankruptcy Appellate Panel of the Ninth Circuit has stated that

After due consideration, we respectfully reject the reasoning of *Robb, Davidson,* and *Nowak* insofar as they apply quasi estoppel to alimony payments that are characterized as a property division. The parties' characterization of the transaction on their tax returns is merely evidence of their intent regarding the transaction, and does not act to estop the party from taking a subsequently different position. Three reasons support the conclusion that quasi estoppel does not apply on the facts of the present case.

First, quasi estoppel is inconsistent with the court's obligation to examine the substance, rather than the form, of the transaction. The parties are not estopped to deny the nature of the debt as either alimony or a property division by the fact that they called it that in the agreement creating the obligation, or that they termed it that in submissions to the state court. In short, the parties are not bound by the label they use in creating the obligation itself. Because quasi estoppel would act to bind a party as a matter of law to the label used in the wholly collateral matter of filing income tax returns, it is inconsistent with well-settled precedent and must be rejected.

Second, section 523(a)(5) serves important public policies that should not be driven by the contents of a person's tax returns.

The rationale for the exemption from discharge for support obligations is threefold: the protection of the spouse who may lack job skills or who may be incapable of working, the protection of minor children who may be

neglected if the custodial spouse entered the job market, and the protection of society from an increased welfare burden that may result if debtors could avoid their familial responsibilities by filing for bankruptcy.

*Shaver [v. Shaver]*, 736 F.2d [1314] at 1316 n. 3 [(9th Cir.1984)] (citation omitted). For this reason, courts are directed to examine the substance, and not the form, of the obligation. Quasi estoppel is concerned only with the equitable relationship between the particular parties, not the larger interests of society as a whole. The application of quasi estoppel to cases such as this would restore form over substance at the expense of these public policy concerns.

Third, the application of quasi estoppel creates the very real possibility of inconsistent results. Under quasi estoppel, the filing of the first tax return after the divorce would permanently place the nature of the transaction beyond inquiry by the bankruptcy court. However, the taxing authorities are not bound by the parties' characterization of the transaction, nor by the characterization applied by the taxpayer in the tax return. As is the case with the Bankruptcy Code, the determination of whether an obligation represents alimony or a property settlement for the purposes of income tax is determined by the substance, and not the form, of the transaction. The quasi estoppel rule stated in *Robb* and *Davidson* thus creates the possibility of two federal courts each examining the substance of the transaction and then reaching opposite results.

*Kritt v. Kritt (In re Kritt)*, 190 B.R. 382, 388–389 (9th Cir. BAP 1995) (citations and footnote omitted) (hereafter "Kritt"). The *Kritt* analysis has met with wide acceptance. *See Sillins v. Sillins (In re Sillins)*, 264 B.R. 894, 898 (Bankr.N.D.Ill.

2001); *Horner v. Horner (In re Horner)*, 222 B.R. 918, 923 n. 5 (S.D.Ga.1998); *Kelley v. Kelley (In re Kelley)*, 216 B.R. 806, 809–10 (Bankr.E.D.Tenn.1998). This Court, after a thorough review of the case law, finds the analysis in *Kritt* to be the most compelling and in line with the statements contained in *Sampson*, and thus holds that the treatment of a payment as alimony for income tax purposes is but one factor to be considered by a bankruptcy court in making its determination under § 523(a)(5).

In this case, both parties testified that they relied upon the advice of their accountant to determine the tax treatment of the $90,000 Award. There is no evidence that either party considered the tax nature of the $90,000 Award at the time they entered into the agreement reflected in the Decree. A large portion of the monies paid by Mr. Bailey in partial satisfaction of the $90,000 Award were not treated as alimony for tax purposes by either party. Given the presence of the other factors discussed above, the tax treatment of a portion of the $90,000 Award does not warrant a conclusion that the parties intended the $90,000 Award to be in the nature of support.

Having determined that the parties did not intend the $90,000 Award to be in the nature of support, the Court need go no further. However, if the Court were required to consider to the second prong of the test outlined in *Young*, it would conclude that the payments under the $90,000 Award did not actually operate as support. The evidence shows that Ms. Bailey had significant experience in business management prior to the marriage. She gained more experience during the marriage. There is no evidence in the record to suggest that Ms. Bailey lacked the necessary skills to obtain gainful employment after her severance from EST. The financial

information provided to the Court indicates that she was able to quickly earn an income equal to or greater than that which she earned at EST. While the Court is loath to punish parties for their success, the fact in this case is that the $90,000 Award did not operate to replace the income which Ms. Bailey received from EST; she replaced that income through her efforts.

### Conclusion

The Court rules that the $90,000 Award represented compensation to Ms. Bailey for her interest in EST. Such compensation is in the nature of property division and thus dischargeable in this bankruptcy case.