**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-15-1012-FKiKu |
| ) | |
| KAMAL ZEEB, ) | Bk. No. 8:13-bk-14883-CB |
| ) | |
| Debtor. ) | Adv. No. 8:13-ap-01301-CB |
| _____ ) | |
| KAMAL ZEEB, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[1] |
| ) | |
| SAMUEL FARAH, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 22, 2015
at Los Angeles, California

Filed – November 3, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:    Andrew Edward Smyth argued for appellant Kamal
Zeeb; Jeffrey Valentine Weber of Briggs and
Alexander, APC argued for appellee Samuel Farah.

Before: FARIS, KIRSCHER, and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Appellant Kamal Zeeb appeals from the bankruptcy court's judgment holding that his debt to Appellee Samuel Farah is nondischargeable under 11 U.S.C. § 523(a)(6) (2010).[2] The bankruptcy court held that a prebankruptcy judgment against Mr. Zeeb for conversion and breach of contract established "willful and malicious injury" such that the judgment was nondischargeable. We hold that a judgment for conversion and breach of contract under California law, without anything more, does not necessarily determine that the debt is for "willful" and "malicious" injury under § 523(a)(6). Accordingly, we VACATE the bankruptcy court's order and REMAND this case to the bankruptcy court.

**FACTS**

Mr. Farah and Mr. Zeeb worked together in two businesses: Storm Distribution, Inc. ("Storm Distribution") and JSSA Enterprises, Inc. ("JSSA"). Mr. Farah managed the sales and accounts, while Mr. Zeeb managed the facilities and employees.

On or around March 1, 2012, Mr. Farah filed his First Amended Complaint in the Superior Court of Orange County, California, alleging thirteen causes of action against Mr. Zeeb, Ahmed Shamekh, JSSA, Zeeb Brothers, Inc., and Hookah and More. Four of the causes of action stated in the complaint are relevant to this proceeding. All four causes of action were based on the

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

factual allegations that, while Mr. Farah was out of the country in 2010, Mr. Zeeb misappropriated inventory, cash, and other assets from the two businesses. Based on these factual allegations, Mr. Farah stated two causes of action for conversion (one relating to Storm Distribution and the other to JSSA) and two corresponding causes of action for breach of contract.

Commencing on May 15, 2013, the superior court held a jury trial on Mr. Farah's claims. The jury rendered a special verdict in which it found that:

(1) Mr. Zeeb breached his contract relating to Storm Distribution, causing Mr. Farah to suffer damages of $330,514.25;

(2) Mr. Zeeb "intentionally and substantially" interfered with Mr. Farah's property by taking possession of the funds and inventory of Storm Distribution, but Mr. Farah's damages were zero;

(3) Mr. Zeeb engaged in the conduct relating to Storm Distribution "with malice, oppression, or fraud," and Mr. Farah was entitled to punitive damages of $50,000;

(4) Mr. Zeeb breached his contract relating to JSSA, causing Mr. Farah to suffer damages of $101,091.45;

(5) Mr. Zeeb "intentionally and substantially" interfered with Mr. Farah's property by taking possession of the funds and inventory of JSSA, but Mr. Farah's damages were zero; and

(6) Mr. Zeeb engaged in the conduct relating to JSSA "with malice, oppression, or fraud," and Mr. Farah was entitled to punitive damages of $50,000.

Before the superior court entered judgment on the special verdict, Mr. Zeeb filed for chapter 7 bankruptcy protection on

3

June 7, 2013. In August 2013, Mr. Farah sought and received relief from the automatic stay so that the superior court could enter final judgment on the jury verdict.

On September 9, 2013, the superior court issued a minute order wherein it struck the punitive damages:

> **Ruling: The Court will execute the proposed Judgment that Defendant submitted.** The Special Verdict and the evidence do not support an award for punitive damages. CC 3294(a) provides for punitive damages "In an action for the breach of an obligation not arising from contract." Plaintiff's success on the breach of contract action does not support punitive damages. Plaintiff must prove compensatory tort damages to support tort damages. Additionally, Plaintiff did not introduce evidence of defendant's financial condition. See Simon v san Paolo U.S. Holding Co., Inc. (2009) 35 Cal 4th 1159, 1185. Without this evidence the jury cannot calculate a proper award of punitive damages.

On February 18, 2014, the superior court signed its Amended Judgment on Jury Verdict ("Amended Judgment"), which provided:

> 1. On the cause of action for breach of contract regarding Storm Distribution by Samuel Farah against Kamal Zeeb judgment is awarded in favor of Samuel Farah against Kamal Zeeb in the amount of $330,514.24[.]
>
> . . . .
>
> 3. On the cause of action for conversion regarding Storm Distribution by Samuel Farah against Kamal Zeeb, including a prayer for punitive damages, judgment is awarded in favor of Samuel Fareh against Kamal Zeeb in the amount of $0.00 in compensatory damages and $0.00 in punitive damages.
>
> 4. On the cause of action for breach of contract regarding JSSA Enterprises, Inc. by Samuel Farah against Kamal Zeeb and against Zeeb Brothers, Inc. judgment is awarded in favor of Samuel Farah jointly and severally against Kamal Zeeb and against Zeeb Brothers, Inc. in the amount of $101,091.45[.]
>
> . . . .
>
> 6. On the cause of action for conversion regarding JSSA Enterprises, Inc. by Samuel Farah against Kamal Zeeb and against Zeeb Brothers, Inc., including a prayer for punitive damages, judgment is

4

awarded in favor of Samuel Farah jointly and severally against Kamal Zeeb and against Zeeb Brothers, Inc. in the amount of $0.00 in compensatory damages and $0.00 in punitive damages.

7. Pursuant to the election of remedies, Samuel Farah has elected to take the remedies awarded under breach of contract. The aggregate judgment award to Samuel Farah, therefore, is $431.605.69, of which the entire amount is enforceable against Kamal Zeeb and of which $101,091.45 is enforceable against Zeeb Brothers, Inc.

On September 16, 2013, Mr. Farah initiated an adversary proceeding challenging the dischargeability of the judgment.[3] On May 20, 2014, he filed his Motion for Summary Judgment or Summary Adjudication ("Motion for Summary Judgment"), arguing that collateral estoppel (modernly called "issue preclusion") precluded relitigation of the issues decided by the superior court jury. He contended that the superior court judgment determined that Mr. Zeeb caused "willful and malicious injury" to him under § 523(a)(6).

On July 8, 2014, the bankruptcy court held a hearing on Mr. Farah's Motion for Summary Judgment. Essentially, Mr. Farah argued that, even if the jury concluded that he was not harmed as a result of the conversion, "it's still enough to show that the facts show the malicious intent, show the ill will, show the bad acts, which under Jerich [sic] and Lockerby support finding even a breach of contract claim non-dischargeable." Conversely, Mr. Zeeb argued that the jury's award of zero compensatory

---

[3] The complaint in the adversary proceeding requested that the bankruptcy court determine nondischargeability under § 523(a)(2) and (6) and for denial of discharge under § 727(a)(2) and (7). However, this appeal only concerns nondischargeability of the superior court judgment under § 523(a)(6).

damages shows that it would be inappropriate to apply issue preclusion to the superior court's judgment.

The bankruptcy court took the matter under submission. On July 25, it issued its Order Granting Plaintiff's Motion for Summary Judgment or Summary Adjudication[4] and held, in relevant part:

> The Court reviewed the record and the pleadings, and in particular, reviewed the Amended Judgment on Jury Verdict dated February 18, 2014 entered by the Superior Court of the State of California, County of Orange, Central Justice Center, in case no. 30-2011-00529564 ("Amended Judgment").
>
> Since it is indisputable that both paragraphs 3 and 4 [sic] of the Amended Judgment state that the Plaintiff prevailed on his conversion claims against Defendant,
>
> IT IS ORDERED:
>
> The Motion is granted.

The court entered its judgment in Mr. Farah's favor on or around August 6, 2014. Following the parties' agreement to dismiss all remaining claims, Mr. Zeeb timely filed his notice of appeal on January 14, 2015.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

---

[4] Appellant did not include a copy of the bankruptcy court's order in his excerpts of record. However, we exercised our discretion to review the bankruptcy court's docket, see Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008), and we located the order in the bankruptcy court's docket at document number 20.

6

**ISSUE**

Whether the bankruptcy court erred in holding that the state court judgment against Appellant precludes Appellant from relitigating the issues of willfulness and malice under § 523(a)(6).

**STANDARD OF REVIEW**

We review "the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error[.]" Hedlund v. Educ. Res. Inst. Inc., 718 F.3d 848, 854 (9th Cir. 2013) (quoting Miller v. Cardinale (In re DeVille), 361 F.3d 539, 547 (9th Cir. 2004)).

"We review rulings regarding rules of res judicata, including claim and issue preclusion, de novo as mixed questions of law and fact in which legal questions predominate." Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007) (citing Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988); Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549, 554 (9th Cir. BAP 2002)). "Once it is determined that preclusion doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion." Id. (citations omitted).

**DISCUSSION**

**A.  A judgment cannot be discharged under § 523(a)(6) if it resulted from "willful and malicious injury."**

Section 523(a)(6) provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -

. . . .

7

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

§ 523(a)(6). "Under Ninth Circuit law, willfulness and malice are two distinct elements that must not be conflated." Comcast of L.A., Inc. v. Sandoval (In re Sandoval), 341 B.R. 282, 296 (Bankr. C.D. Cal. 2006).

The Ninth Circuit has recognized that "'a simple breach of contract is not the type of injury addressed by § 523(a)(6)' and held that '[a]n intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful **tortious conduct**.'" Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1205 (9th Cir. 2001) (emphasis in original) (quoting Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992)). "Where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6). Id. (citations omitted).

**1. Willfulness**

The Ninth Circuit has held that

the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury **or** that the debtor believed that injury was substantially certain to occur as a result of his conduct. We believe that this holding comports with the purpose [of] bankruptcy law's fundamental policy of granting discharges only to the honest but unfortunate debtor.

Id. at 1208 (emphasis in original). The "willful" analysis requires an inquiry into the debtor's subjective state of mind. See Carrillo v. Su (In re Su), 290 F.3d 1140, 1145-46 (9th Cir. 2002) ("Congress did not intend § 523(a)(6)'s willful injury

8

requirement to be applied so as to render nondischargeable any debt incurred by reckless behavior, [which] reinforces application of the subjective standard. The subjective standard correctly focuses on the debtor's state of mind and precludes application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual knowledge that harm to the creditor was substantially certain.").

The touchstone of this standard is that the debtor must have intended to injure the creditor or must have known that the debtor's acts were substantially certain to injure the creditor. It is not enough to prove that the debtor acted intentionally and caused an injury. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

### 2. Malice

As to the second prong, the Ninth Circuit has stated that "[a] 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" In re Jercich, 238 F.3d at 1209 (quoting Murray v. Bammer (In re Bammer), 131 F.3d 788, 791 (9th Cir. 1997)).

**B. The bankruptcy court erred in holding that the superior court judgment decided the issue of "willful and malicious injury."**

The main question before the Panel is whether the superior court judgment precludes relitigation of the "willful and malicious injury" issues before the bankruptcy court.

The usual rules of issue preclusion apply in dischargeability litigation. Grogan v. Garner, 498 U.S. 279, 284-85 (1991). Under the full faith and credit statute, federal courts must give state court judgments the same preclusive effect

9

that a state court would.  See 28 U.S.C. § 1738; <u>Gayden v. Nourbakhsh (In re Nourbakhsh)</u>, 67 F.3d 798, 800 (9th Cir. 1995) (citing <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985)).  To determine the preclusive effect of a state court judgment, federal courts apply the preclusion law of the state in which the judgment was entered.  See <u>Marrese</u>, 470 U.S. at 380; <u>DiRuzza v. Cty. of Tehama</u>, 323 F.3d 1147, 1152 (9th Cir. 2003).  Therefore, California law on issue preclusion applies.

**1.  California law on issue preclusion**

In California, issue preclusion prevents parties from relitigating issues already decided in prior proceedings.  <u>Lucido v. Super. Ct.</u>, 51 Cal. 3d 335, 341 (1990).  The party asserting issue preclusion must prove five elements.  First, the issues to be precluded must be identical to the ones decided in the prior proceeding.  Second, the issues must have been actually litigated in the prior proceeding.  Third, the issues must have been necessarily decided.  Fourth, the decision must have been final and on the merits.  Finally, the party to be precluded must be identical to or in privity with a party to the prior proceeding.  <u>Id.</u>

"The party seeking to apply issue preclusion has the burden of proving that each element is satisfied.  To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and the exact issues litigated in the prior action.  Any reasonable doubt as to what was decided in the prior action will weigh against applying issue preclusion."  <u>Brandstetter v. Derebery (In re Derebery)</u>, 324 B.R. 349, 353 (Bankr. C.D. Cal. 2005) (citing <u>Kelly v. Okoye (In re Kelly)</u>,

10

182 B.R. 255, 258 (9th Cir. BAP 1995)).

The doctrine of issue preclusion is not mechanically applied. Instead, the court must apply it when it advances three policies: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am., 133 Cal. App. 4th 1319, 1333 (2005) (quoting Wright v. Ripley, 65 Cal. App. 4th 1189, 1193 (1998)).

**2.    Preclusive effect of the state-court judgment**

**a.    Are the issues identical?**

The first prong of the issue preclusion test requires comparison of the issues presented in the current case with the issues presented in the prior case that resulted in the judgment.

**i.    Conversion**

We first compare the elements of conversion to the definition of "willful and malicious injury."

Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another." Ortega v. Toyota Motor Sales, USA, Inc., 572 F. Supp. 2d 1218, 1220 (S.D. Cal. 2008) (quoting Farmers Ins. Exch. v. Zerin, 53 Cal. App. 4th 445, 451 (1997)). "A claim for conversion requires the plaintiff's ownership or right of possession at the time of the conversion, the defendant's conversion by a wrongful act of disposition of

11

property rights and damages."[5]  Id. (citing Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (1998)); see Farmers Ins. Exch., 53 Cal. App. 4th at 451 (In California, "[t]he elements of a conversion are the [creditor's] ownership or right to possession of the property at the time of the conversion; the [debtor's] conversion by a wrongful act or disposition of property rights; and damages.").

The three elements of conversion under California law do not include the elements of the "willful" and "malicious" prongs under § 523(a)(6).  Conversion under California law does not require a showing that the defendant subjectively intended to injure the plaintiff or subjectively knew that the defendant's conduct was substantially certain to injure the plaintiff.

As we have previously held, conversion "establishes the debtor's 'wrongful exercise of dominion over the personal property of another,' but it 'does not necessarily decide the type of wrongful intent on the part of the debtor that is necessary for the damages to be a nondischargeable debt under § 523(a)(6).'"  Thiara v. Spycher Bros. (In re Thiara), 285 B.R. 420, 429 (9th Cir. BAP 2002) (quoting Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037-39 (9th Cir. 2001)); see also

_____

[5] Mr. Zeeb argues that the jury's award of zero dollars necessarily means that the jury did not find for Mr. Farah on the conversion claims.  The fact that the judgment is for zero dollars on the conversion claims raises the question of whether there is in fact a "debt" that could be nondischargeable. However, the bankruptcy court did not address this question, and the parties only tangentially raised this issue in their briefs. We make no determination on this question and will leave it for the bankruptcy court to consider on remand.

In re Sandoval, 341 B.R. at 295 ("Under California law, 'a conversion is not per se a willful and malicious injury to the property of another'") (quoting In re Peklar, 260 F.3d at 1037) (citing id. at 1039 ("[a] judgment for conversion under California substantive law decides only that the defendant has engaged in the 'wrongful exercise of dominion' over the personal property of the plaintiff. It does not necessarily decide that the defendant has caused 'willful and malicious injury' within the meaning of § 523(a)(6)")).

Similarly, conversion under California law does not necessarily implicate "maliciousness." Maliciousness requires (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. In re Jercich, 238 F.3d at 1209 (citation omitted). While one of the elements of conversion encompasses a "wrongful act," the other elements do not satisfy the remaining maliciousness prongs. We thus conclude that the conversion, in and of itself, is not necessarily "malicious."

The bankruptcy court held that the superior court judgment satisfied § 523(a)(6) because the jury found against Mr. Zeeb on the conversion claims. In its order, the bankruptcy court stated that, "[s]ince it is indisputable that both paragraphs 3 and 4 [sic] of the Amended Judgment state that the Plaintiff prevailed on his conversion claims against Defendant," it would grant summary judgment. The court apparently concluded that conversion, in and of itself, satisfies § 523(a)(6). This is incorrect as a matter of law. Absent additional, necessary findings that satisfy the discrete elements of "willful" and

13

"malicious" injury, the elements of conversion are not identical to the issues of "willful" and "malicious" injury.

### ii. Punitive damages

Mr. Farah argues that the jury's award of punitive damages, which the superior court later struck, is sufficient to establish a "willful and malicious injury." We disagree.

Only judgments have preclusive effect. <u>See</u> Restatement (Second) of Judgments § 13 (1982) ("The rules of res judicata are applicable only when a final judgment is rendered."); <u>cf.</u> <u>Ornellas v. Oakley</u>, 618 F.2d 1351, 1356 (9th Cir. 1980) ("A reversed or dismissed judgment cannot serve as the basis for a disposition on the ground of res judicata or collateral estoppel." (citations omitted)). The superior court expressly refused to enter judgment granting punitive damages. Despite the jury's findings that Mr. Zeeb engaged in conduct with malice, oppression, or fraud, the superior court held, as a matter of law, that Mr. Farah was not entitled to punitive damages. The jury's special verdict awarding punitive damages has no preclusive effect because the court declined to enter judgment on that portion of the verdict.

### b. Were the issues actually litigated?

An issue is "actually litigated" when the issue was raised, actually submitted for determination, and determined. <u>Baker v. Hull</u>, 191 Cal. App. 3d 221, 226 (1987). In the present case, Mr. Zeeb and Mr. Farah both fully litigated the causes of action for breach of contract and conversion. However, we are unable to discern from the record whether all of the issues concerning the distinct "willful" and "malicious" tests - especially the

14

requirement of the debtor's subjective intent to injure - were raised and litigated before the superior court. As such, we cannot say that the second requirement has been met.

### c. Were the issues necessarily decided?

An issue was "necessarily decided" if the issue was not "entirely unnecessary" to the judgment in the prior proceeding. Lucido, 51 Cal. 3d at 342. While the elements of conversion were "necessarily decided," as evidenced by the jury's special verdict forms, the issues concerning willful and malicious injury were not before the jury and were thus not "necessarily decided." The third requirement has not been met.

### d. Is the judgment final?

A judgment is the final determination of the rights of the parties in an action. Cal. Code Civ. P. § 577. In California, a judgment is "final" when it terminates the litigation between the parties on the merits and leaves nothing else to do except enforce the judgment. Sullivan v. Delta Air Lines, Inc., 15 Cal. 4th 288, 304 (1997). The parties here do not dispute that the Amended Judgment issued by the superior court, followed by the parties' stipulation to dismiss the remaining claims, was a final judgment. The fourth requirement is thus satisfied.

### e. Were the parties identical?

The parties to this appeal, Mr. Zeeb and Mr. Farah, were parties to the proceeding before the superior court. As such, the fifth requirement is satisfied.

* * *

Therefore, the bankruptcy court erred by applying issue preclusion to the superior court judgment with regard to "willful

15

and malicious injury" under § 523(a)(6). Conversion, in and of itself, is not sufficient to establish "willful and malicious injury," as the issues were not identical; the "willful and malicious" issues were not fully litigated; and the "willful and malicious" issues were not necessarily decided.

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's ruling in favor of Mr. Farah and REMAND the case to the bankruptcy court for further proceedings consistent with this decision.